IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 4, 2024 at Jackson

## STATE OF TENNESSEE v. JERRY DONALD BROWN, III

**Appeal from the Circuit Court for Giles County**
**No. 16554     M. Caleb Bayless, Judge**

———————————————————

### No. M2023-01220-CCA-R3-CD

———————————————————

The defendant, Jerry Donald Brown, III, appeals the order of the trial court denying his motion to withdraw his guilty plea. Upon our review of the record and the parties' briefs, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and KYLE A. HIXSON, JJ., joined.

Brandon White, Columbia, Tennessee, for the appellant, Jerry Donald Brown, III.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Brent Cooper, District Attorney General; and Kyle Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

The defendant was indicted by a Giles County Grand Jury of one count each of aggravated assault, domestic assault, vandalism of property up to $1,000, and resisting arrest. After several months of plea negotiations between the State and the defendant's counsel, the defendant accepted a plea offer on April 25, 2023, and entered a guilty plea to each of the charges in exchange for a term of supervised probation for three years, as well

as a restitution payment of $3,800.00.[1]  On May 22, 2023, represented by new counsel, the defendant filed a motion to withdraw his guilty pleas.

A hearing on the defendant's motion to withdraw was held on August 1, 2023.  At the hearing, the following testimony was presented:

Over the course of approximately seven months, while the defendant's case was pending in the Circuit Court, the defendant had several phone conversations, email correspondences, and in-person meetings with trial counsel to discuss his case.  During those conversations, the defendant made clear that his "ultimate goal was to avoid jail time."

On April 24, 2023, the defendant met with trial counsel to discuss a settlement offer to be presented to the State.  The offer proposed that in exchange for pleading guilty to aggravated assault, vandalism, and resisting arrest, and a restitution payment of $100.00, the State would agree to a sentence of three years suspended to supervised probation.  The State, however, wanted to confer with the victim about the restitution amount prior to agreeing.  The defendant testified that when he left the courthouse, he was unaware of his case being reset for the next day.  The defendant claimed he did not receive the case status order that set the date and time of his next court appearance.  The defendant understood that trial counsel would call him with a new court date.

On April 25, 2023, the defendant received a phone call at approximately 9:03 a.m. from trial counsel advising him of a counteroffer from the State.  Under the counteroffer, the defendant would receive a sentence of supervised probation for three years and pay restitution of $3,700.00 for damage to the victim's vehicle and $100 for the victim's prescription medication.  Counsel asked the defendant to think about it and "get back to him."  The defendant testified that during this phone call he was drowsy and had difficulty understanding trial counsel.  The defendant claimed he was not told that he needed to be present in court that day.  At approximately 11:40 a.m., the defendant received a second phone call from trial counsel inquiring about his thoughts on the offer.  The defendant and trial counsel discussed requesting a month-long continuance to allow the defendant more time to consider.

The defendant received a third phone call at approximately 1:32 p.m. from trial counsel's receptionist, stating that he needed to be at the courthouse to review and decide whether to accept the State's counteroffer.  The defendant testified that the receptionist told

---

[1] Pursuant to the plea agreement, the defendant agreed to pay $100 in restitution to reimburse the victim for prescription medication expenses and $3,7000 for damages to the victim's vehicle.

him that failure to appear would result in a warrant for his arrest. The defendant went to the courthouse as instructed.

While at the courthouse, the defendant and trial counsel discussed the counteroffer for five to ten minutes. The defendant testified that counsel advised him that if he declined the offer, the case would go to trial. The defendant also claimed that trial counsel advised him that even if the jury were to only convict him of misdemeanor vandalism and evading arrest, he would be sentenced to six years in prison. The defendant felt "rushed to make a decision" and noted that the offer was "take this or leave it." While the defendant testified that his "ultimate goal was to avoid jail time," he felt he "didn't really have much time to discuss [the offer] or give any real thought to it." The defendant relayed to trial counsel that while he "wasn't happy with the way this deal went," he was "thankful that [he] was getting a plea deal that kept [him] out of jail."

Ultimately, the defendant agreed to the counteroffer. During the plea submission before the trial court, the following exchanges took place:

> THE COURT: I am looking at your waiver of trial by jury and petition to enter a plea of guilty. I see your signature on the third page. Is that, in fact, your signature?
>
> DEFENDANT: That is my signature.
>
> THE COURT: Thank you. Before you signed this, did [trial counsel] carefully go over this document with you?
>
> DEFENDANT: I believe he did, yes.
>
> THE COURT: Good. And do you believe you understood it?
>
> DEFENDANT: I do believe I understood it.
>
> THE COURT: Good. Let's look at your agreement to make sure your understanding and mine match so that we don't go through all of this and then find out it was for nothing. In 16554, in Count I, you are charged with aggravated assault, a class C felony. So as [trial counsel] would have told you, three-to-six-year range of punishment. The fine could be as much as $10,000. The agreement in your case is you will plead to that offense. The sentence will be a three-year sentence, but you will be placed on probation. You will pay restitution of $100 representing the prescription cost and you

will have no contact with the victim. So far is that your understanding?

DEFENDANT: Yes, Your Honor.

THE COURT: Good. We will now move to Count II, domestic assault, a class A misdemeanor, 11/29 is the maximum punishment, $2,500 is the maximum fine. And your agreement is you will plead to that offense. The sentence will be 11 months, 29 days, but you will be placed on probation and Count II will run concurrent with Count I. Still understanding?

DEFENDANT: Yes, Your Honor.

. . .

THE COURT: All right. In Count III, you are charged with vandalism, a class A misdemeanor. The agreement is you will plead to that offense. The sentence will be 11 months and 29 days. You will be placed on probation. And Count III also runs concurrent with Count I.

As far as restitution goes, you will pay restitution in the amount of $3,700, representing the damage to the 2002 Honda Odyssey. So far, do I have it right?

DEFENDANT: That is correct, Your Honor.

THE COURT: Good. There is one more. Count IV, you are charged with resisting arrest. The agreement is six months probation. It will run concurrent with Count I. That is my understanding, does that match yours?

DEFENDANT: Yes, Your Honor, it matches mine.

. . .

THE COURT: Now you don't have to plead guilty to anything. You have a right to a trial, a public and speedy trial, the right to be represented by an attorney, to subpoena witnesses, to cross-examine witnesses, and every witness that testifies has to do so in front of you, and you

- 4 -

have a Fifth Amendment right against self-incrimination. If I accept your pleas, you are waiving those rights.

Has anybody threatened you to try and make you plead guilty or pay you money to try to bribe you to plead guilty?

DEFENDANT: (negative answer)

. . .

THE COURT: I have observed you as you have answered these questions and I will tell you, I am satisfied that you knowingly, freely, and intelligently waived your constitutional rights.

Despite the defendant's statements at the allocution hearing, the defendant testified at the hearing on his motion to withdraw that he did not agree with the amount of restitution for the vehicle damage. He stated that he had only been charged with vandalism of property of an amount up to $1,000, but there was never a discussion as to the reasoning for the difference in damage amounts. The defendant claimed that when he entered into the plea agreement, he was "in fear that [he] would go to prison. Any substantial jail time or prison time would cost [him] every single thing [he has]. And my ultimate goal . . . was to stay out of jail."

Trial counsel testified that on April 24, 2023, he met with the defendant to review a settlement offer to be presented to the State. The April 24th offer was not the first offer exchanged with the State, and it was the result of months of negotiations in his attempt to exclude jail time for the defendant. Trial counsel testified that the State had not yet agreed to the April 24th settlement offer because they had not been able to confer with the victim regarding the restitution amount.

Trial counsel stated that during his second phone call with the defendant on April 25, 2023, he had a substantive conversation concerning the counteroffer from the State. He told the defendant that the offer contained no jail time, but that if he did not accept it, the only other choice was to set the matter for trial. He also told the defendant that if he was convicted of aggravated assault, there was a "distinct possibility" he would receive jail time. While trial counsel attempted to reset the case to give the defendant more time to contemplate the counteroffer, the State made clear that it was a "take it or leave it position."

On cross-examination, trial counsel testified that he received an initial offer from the State on January 31, 2023, which included a six-year sentence for the aggravated assault charge with one year to be served in jail and a restitution amount of $4,000. The offer

discussed with the defendant on April 24, 2023, was a counteroffer to the initial offer that did not include jail time. Trial counsel testified that the counteroffer presented by the State on April 25th, which the defendant ultimately signed, was the result of his negotiation to avoid jail time for the defendant, and that he was "extraordinarily pleased."

After hearing arguments from counsel, the trial court found that the defendant did not prove a manifest injustice occurred when he pled guilty. Instead, the trial court stated that it "still [has] not heard what exactly [the defendant] misunderstood in regard to the plea." The trial court also accredited the testimony of trial counsel that he never told the defendant he would serve six years in jail if found guilty on the misdemeanor charges and found the defendant presented no proof that his plea was entered into involuntarily. Ultimately, the trial court found, "this is the defendant's change of heart about pleading guilty or defendant's dissatisfaction with the punishment ultimately imposed and that does not constitute a manifest injustice warranting a withdrawal." The trial court denied the defendant's motion, and this timely appeal followed.

**Analysis**

On appeal, the defendant contends that the trial court abused its discretion in denying his motion to withdraw his guilty plea because he presented sufficient evidence of the need to correct a manifest injustice. Specifically, the defendant claims (1) he established his guilty pleas were entered under fear of a prison sentence and a misunderstanding of the potential sentence he might receive at trial; (2) he did not knowingly, voluntarily, and understandingly enter into the plea agreement; and (3) his due process rights were violated. The State contends the trial court did not abuse its discretion in finding there was no manifest injustice related to the defendant's guilty pleas. After review, we agree with the State.

A defendant does not have a unilateral right to withdraw a plea. *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003); *see also State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Whether a defendant should be permitted to withdraw a plea is a matter addressed to the sound discretion of the trial court, regardless of when the motion is filed. *Mellon*, 118 S.W.3d at 345; *see also Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947). The trial judge "should always exercise his discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of a crime may have a fair and impartial trial." *Henning*, 201 S.W.2d at 671. The trial court's decision "will not be reversed unless it clearly appears that there was an abuse of discretion." *Id.* An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion. *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995). However, the record must contain some substantial evidence to support the trial court's decision. *Id.*

- 6 -

The withdrawal of a guilty plea is governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure. Rule 32(f) provides, "[a]fter a sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." This standard is based "upon practical considerations important to the proper administration of justice." *State v. Crowe*, 168 S.W.3d 731, 741 (Tenn. 2005) (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963)). Trial courts and appellate courts must determine whether manifest injustice exists on a case-by-case basis. *Turner*, 919 S.W.2d at 355. In this case, the defendant filed his motion to withdraw his plea of guilty after he was sentenced. Therefore, the defendant must show that his guilty plea should be set aside to correct a manifest injustice. *See id.*

Although Rule 32(f) does not define "manifest injustice," the courts have found withdrawal to correct manifest injustice where: (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 88 (1963); (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea." *Crowe*, 168 S.W.3d at 742.

The defendant has the burden of establishing that the plea of guilty should be withdrawn to prevent "manifest injustice." *Turner*, 919 S.W.2d at 355. In determining whether the defendant has carried this burden, the trial court must determine whether the defendant and any witnesses presented are credible. *Id.* To establish manifest injustice, a "defendant must show more than a change of heart or dissatisfaction with the punishment ultimately imposed." *Id.*

Here, the defendant argues that when he entered his guilty plea, he was both fearful of a jail sentence and felt pressured by the State's refusal to allow him more time to contemplate the offer. The defendant argues because the State's offer was "take it or leave it," he was "fear-mongered" into pleading guilty. We do not agree with the defendant's argument. Although the defendant alleges that he felt rushed and pressured to accept the offer on April 25, 2024, it is clear from trial counsel's testimony that this offer was the result of months of negotiation with the State. The April 25th offer was the first offer from the State that did not include jail time, which was the defendant's "ultimate goal." Further, at the plea allocution, the trial court questioned the defendant as to whether he felt threatened into pleading guilty to which the defendant responded in the negative. Accordingly, we conclude the trial court did not abuse its discretion in its determination that manifest injustice did not exist.

Second, the defendant contends the trial court abused its discretion because he established that he pled guilty under a misunderstanding of the potential punishments he might have received if he had proceeded to trial. While the defendant testified that trial counsel told him that he would receive a six-year jail sentence if a jury found him guilty of misdemeanor vandalism and resisting arrest, trial counsel testified to the contrary. Ultimately the trial court accredited trial counsel's testimony over that of the defendant. Therefore, the trial court did not abuse its discretion in finding that the defendant understood the consequences of his plea.

The defendant also contends he did not knowingly, voluntarily, and understandingly enter into the plea agreement. "A plea is not voluntary if it is the result of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .' *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin v. Alabama,* 395 U.S. 238, 242-43 (1969)). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244. Statements made by a defendant, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Pendergrast v. State*, No. M2023-00057-CCA-R3-PC, 2024 WL 1174706, *9 (Tenn. Crim App. Mar. 19, 2024), *perm. app. denied* (Tenn. July 17, 2024). "Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a [defendant] must present more than 'conclusory allegations unsupported by specifics.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Here, during the plea allocution, the trial court ensured the defendant understood each charge against him, the agreed-upon punishment for each charge, and the consequences of his plea. Under oath, the defendant stated he understood the plea agreement, that he had discussed the facts of the case with counsel, and that he was entering the guilty pleas voluntarily. After hearing from the defendant, the trial court was "satisfied that [the defendant] knowingly, freely, intelligently waived [his] rights." Further, trial counsel testified that he had fully advised the defendant of his charges and had conferred with him several times before the defendant entered his guilty plea. The defendant's testimony at his plea allocution, the testimony of trial counsel, as well as the findings of the trial court, established that the defendant's guilty pleas were made knowingly, freely, and intelligently.

Lastly, the defendant contends his due process rights were violated because the prosecutor refused to grant his request for additional time to contemplate the April 25th offer. However, the record establishes that the defendant did not raise this objection prior to or during his plea allocution. "A party is not entitled to relief when it failed to take

whatever action was reasonably available to prevent or nullify a harmful effect of an error." Tenn. R. App. P. 36(a). Therefore, we conclude that the defendant has waived review of this issue for failure to raise it before the trial court prior to his allocution.

Regardless of the defendant's waiver, plea agreements are to be treated as contracts. *State v. Bobo*, No. W2015-00930-CCA-R3-CD, 2016 WL 7799284, *5 (Tenn. Crim. App. Mar. 2, 2016). As under contract law, a plea offer from the State is revocable until it is accepted by the trial court. *Turner*, 713 S.W.2d at 329. Therefore, it is not a due process violation for the State to exercise its authority and discretion to limit the time within which an offer may be accepted. This issue is without merit.

## Conclusion

Based upon the foregoing authorities and reasoning, we affirm the trial court's denial of the defendant's motion to withdraw his guilty pleas.

_____
J. ROSS DYER, JUDGE